**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

>    Plaintiff,

>    v.

QWEST CORPORATION, dba CENTURYLINK QC,

>    Defendant.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND**

---

Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by and through its undersigned counsel, Gibson Dunn & Crutcher LLP, files this Complaint for Declaratory Judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, requesting a declaration of the parties' rights and obligations with respect to a commercial general liability policy issued by Liberty Mutual. In support, Liberty Mutual states as follows:

**<u>NATURE OF THE ACTION</u>**

1.     In December 2023, Defendant Qwest Corporation dba Century Link QC ("CenturyLink") was named as a defendant in three lawsuits relating to the devastating Marshall Fire that started on December 30, 2021 in Boulder County. The lawsuits allege that a CenturyLink telecommunications line came unmoored several months prior to the Marshall Fire and repeatedly made contact with another company's telecommunications line which, according to the lawsuits, then came into contact with and ignited electrical equipment.

1

2.      Liberty Mutual brings this action to obtain a judgment determining the scope and nature of its rights and obligations as to CenturyLink, which is not a Liberty Mutual policyholder.  Rather, CenturyLink claims to be an "additional insured" under a Liberty Mutual commercial general liability policy issued in Florida to Dycom Industries, Inc. ("Dycom") for the January 31, 2021 to January 31, 2022 policy period (the "Policy")—and has requested that Liberty Mutual defend and indemnify CenturyLink in the Marshall Fire lawsuits.  Liberty Mutual seeks a declaration that CenturyLink is not an additional insured under the Policy and that Liberty Mutual has no duty to defend or indemnify CenturyLink.  A certified copy of the Policy is attached as Exhibit A hereto.

3.      Although a stranger to the Policy, CenturyLink claims that Dycom's subsidiary— Pauley Construction, Inc., later converted to Pauley Construction, LLC (together, "Pauley")[1]— purportedly agreed in a 2009 Master Services Agreement to name CenturyLink on certain insurance policies for damages allegedly resulting from Pauley's work.  But that obligation was not limitless, in time or in scope, and thus Pauley did not have CenturyLink named in the Policy.

4.      Rather, CenturyLink seeks to invoke an additional insured endorsement that applies to "[a]ll persons or organizations for whom [a named insured has] agreed in a written contract or agreement, prior to an 'occurrence' or offense, to provide additional insured status."

5.      In an abundance of caution, Liberty Mutual has agreed to treat CenturyLink as an additional insured and provide CenturyLink a defense in the underlying lawsuits, subject to a full reservation of rights (including the right to seek reimbursement of defense costs paid).  But

---

[1] Liberty Mutual is informed and believes that on or around May 2016, Pauley Construction, Inc. was converted to Pauley Construction, LLC.

2

CenturyLink has yet to demonstrate that it qualifies as an additional insured under Dycom's insurance policy. And even if CenturyLink could qualify as an additional insured, the scope of coverage potentially available to CenturyLink would be limited. For example, the Policy would not insure CenturyLink for its own negligence or for liability in underlying lawsuits that, as here, are not seeking to hold CenturyLink vicariously liable for Pauley's work.

6.      For these and other reasons, Liberty Mutual seeks declarations confirming that it has no obligations to CenturyLink of any kind and is entitled to reimbursement of defense costs paid. Alternatively, Liberty Mutual seeks a declaration limiting the scope of Liberty Mutual's obligations to CenturyLink.

**PARTIES**

7.      Plaintiff Liberty Mutual is a corporation incorporated under the laws of Wisconsin and with its principal place of business in Boston, Massachusetts.

8.      Defendant Century Link is a corporation incorporated under the laws of Colorado and with its principal place of business in Monroe, Louisiana.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Plaintiff Liberty Mutual is a citizen of Wisconsin and Massachusetts, and Defendant CenturyLink is a citizen of Colorado and Louisiana.

10.    This Court has personal jurisdiction over CenturyLink because it is incorporated in Colorado and the events for which CenturyLink now seeks defense and indemnification from Liberty Mutual took place within this District.

11.    Declaratory relief is authorized and appropriate in this action pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.  An actual, justiciable controversy exists between the parties regarding the coverage afforded under a commercial policy issued by Liberty Mutual to Dycom, and the relief requested herein is necessary to declare the parties' contractual rights, duties, and obligations.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because CenturyLink is a resident of Colorado.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and circumstances giving rise to the underlying lawsuits occurred in this District, and the underlying lawsuits for which CenturyLink seeks defense and indemnification are pending in state courts located within this District.

## THE UNDERLYING MARSHALL FIRE LITIGATION

13.    On or around December 30, 2021, a fire ignited at or near the Marshall Mesa Trailhead in Boulder County around the same time as a second, nearby fire.  Due to extreme winds and drought conditions, the fires spread rapidly, merging into what became known as the Marshall Fire and causing extreme destruction to the area.

14.    After the Marshall Fire was extinguished, United States Forest Service and Boulder County Sheriff's Office agents, with the help of experts, investigated the cause of the fire that originated near the Marshall Mesa Trailhead.  The investigators concluded the fire most likely was started by hot particles discharged from disconnected powerlines due to the extreme

4

winds on December 30.  While the media had initially suggested a downed communications line had started the fire, investigators and consultants concluded that the communication line did not carry sufficient electrical current to have started a fire.

15.    The Marshall Fire gave rise to a flurry of lawsuits seeking compensation for losses, injuries, and damages the fire had caused.  In December 2023, three such lawsuits filed in Boulder County District Court named CenturyLink as a defendant (collectively, the "Underlying Actions").  Each makes substantially similar allegations, namely that CenturyLink is a telecommunications company; that, at the time of the Marshall Fire, CenturyLink had a telecommunications line attached to utility poles at or near the Marshall Mesa Trailhead; and that CenturyLink, along with other defendants, failed to properly design, construct, inspect, maintain, repair, manage, and/or operate its equipment attached to utility poles at or near the Marshall Mesa Trailhead, which the plaintiffs allege may have been associated with the cause of the fire that started in the area.  The first such lawsuit naming CenturyLink, *Target Corp. v. Public Service Company of Colorado d/b/a Xcel Energy, et al.,* Case No. 2023CV31093, brought by the Target Corporation, states a single cause of action for negligence against CenturyLink for damages to a Target store caused by the Marshall Fire.  The second, *Allstate Fire and Casualty Ins. Co. et al. v. Public Service Company of Colorado d/b/a Xcel Energy, et al.,* Case No. 2023CV30483, is a subrogation action brought by insurers who provided coverage to property owners, renters, and businesses in Colorado, and paid covered losses to their respective insureds for damages caused by the Marshall Fire.  The insurer plaintiffs allege a single cause of action against CenturyLink for negligence.  The third, *Cynthia G. Wallace, et al. v. Public Service Company of Colorado d/b/a Xcel Energy, et al.,* Case No. 2023CV30488, was brought primarily

5

by individuals who own property or reside in Colorado and allege the Marshall Fire caused them loss of open space, property damages, evacuation expenses, lost business damages, loss of aesthetic value and quiet enjoyment, personal injury, and emotional distress.  The plaintiffs in *Wallace* bring causes of action against CenturyLink for negligence, premises liability, trespass, public nuisance, private nuisance, negligent infliction of emotional distress, wrongful death, and a survival action.

16.     All three actions were consolidated with a lead case, *Kupfner et al. v. Public Service Company of Colorado d/b/a Xcel Energy et al.*, Case No. 2022CV30195, in Boulder County.  Approximately 80 actions have been consolidated with the lead case to date, although CenturyLink is named as a defendant in just three.

17.     Neither Pauley nor Dycom is named as a defendant in any of the three lawsuits. On April 29, 2024, CenturyLink filed a supplemental designation of non-party at fault identifying Pauley as an additional entity that could be partially responsible for causing some damages sought.  No plaintiffs in any of the three actions have amended their complaints to add allegations regarding Pauley.

## TENDER TO DYCOM AND PAULEY BASED ON THE 2009 MASTER SERVICES AGREEMENT

18.     On January 30, 2024, counsel for CenturyLink sent a letter to Dycom regarding the Underlying Actions.  The letter requested that Dycom's subsidiary, Pauley, defend and indemnify CenturyLink against the Underlying Actions and any other claims that may be alleged against CenturyLink arising from the Marshall Fire.  According to the letter, CenturyLink's telecommunications line at or near the Marshall Mesa Trailhead was installed by Pauley for CenturyLink nearly a decade ago, in or around 2014.

19.     Neither Pauley nor Dycom performed any work on the telecommunications line at or near the Marshall Mesa Trailhead after 2014, including any maintenance or repairs.

20.     CenturyLink based this demand for defense and indemnification on a Master Services Agreement entered into by Pauley and Embarq Management Company in 2009, and later amended to replace CenturyTel Service Group, LLC for Embarq in 2010 (the "2009 MSA").  CenturyTel is the former corporate name of CenturyLink.

21.     CenturyLink's letter suggested that any work completed by Pauley on the at-issue telecommunications line was performed pursuant to the 2009 MSA.  The 2009 MSA set out the basic structure under which CenturyLink (then CenturyTel) could purchase services or other deliverables from Pauley by issuing "Orders" to Pauley for work to be performed.  The 2009 MSA did not itself delineate the work Pauley was to perform for CenturyLink, much less mention any work to be performed in Boulder, Colorado.

22.     The 2009 MSA required Pauley to, among other things, "provide and maintain during the term of the Agreement," a commercial general liability policy with a $1,000,000 combined single limit per occurrence.  2009 MSA § 13.1 & 2009 MSA, Ex. B.  Per the terms of the 2009 MSA, the agreement expired—and therefore Pauley no longer was responsible for providing CenturyLink with insurance coverage—when the last "Annex" or "Order" under the agreement expired.  2009 MSA § 6.1.

23.     In addition to a commercial general liability policy, the 2009 MSA required Pauley to provide various other insurance coverage including:  (i) if Pauley provided professional services, a professional liability / errors & omissions policy with a $1,000,000 per occurrence limit; (ii) if the initial value of the 2009 MSA exceeded $100,000, an excess/umbrella

liability insurance policy with a $2,000,000 per occurrence limit; and (iii) for all contracts

involving excavation, an excess/umbrella liability insurance with a limit of $5,000,000 per

occurrence.  2009 MSA, Ex. B.

24.    The 2009 MSA also provided that, to the fullest extent permitted by law, Pauley

had an uncapped obligation to indemnify, hold harmless, and defend CenturyLink and its agents

from and against all damages resulting from or alleged to result from Pauley's performance or

non-performance as related to services and deliverables under the contract.  2009 MSA § 12.1.

The 2009 MSA's language "to the fullest extent permitted by law" is presumably an

acknowledgement that the vast majority of states have enacted laws forbidding (in whole or in

part) indemnity provisions in construction agreements that require an indemnitor to pay damages

caused by the indemnitee's own fault or negligence, or that of its agents.  *See, e.g.,* Fla. Stat. §

725.06; Colo. Rev. Stat. 13 § 13-50.5-102.

25.    In its January 30, 2024 letter, CenturyLink requested that Dycom immediately

notify its insurance carriers of the claim based on the 2009 MSA's requirement that Pauley

obtain insurance with CenturyLink as an additional insured on the policies during the term of the

2009 MSA.  Dycom thereafter notified Liberty Mutual.  Liberty Mutual is not aware of any other

insurance companies that Dycom notified.

26.    Liberty Mutual is unaware of any evidence that the 2009 MSA was still in force

in 2021.  Liberty Mutual thus believes that the 2009 MSA expired before the 2021 Policy

incepted.

27.    In March 2019, CenturyTel and Dycom entered into a Construction Master

Services Agreement under which CenturyTel could purchase services or deliverables from

Dycom (the "2019 MSA"). Pauley was not a party to the contract. Any orders for work by

CenturyLink to Dycom after March 2019 were governed by the 2019 MSA. The existence of the

2019 MSA suggests that the 2009 MSA expired.

28.     Like the earlier MSA, the 2019 MSA required that Dycom obtain and keep in

force certain amounts of insurance.

29.     The work undertaken by Pauley at the Marshall Mesa Trailhead was completed

prior to the 2019 MSA and was thus not subject to the terms of the 2019 MSA. CenturyLink has

not tendered any of the underlying complaints to Liberty Mutual based on the insurance

requirements of the 2019 MSA.

## THE POLICY

30.     Liberty Mutual issued the Policy to Dycom for the policy period of January 31,

2021 to January 31, 2022. The Policy was issued in Florida, where Dycom is based.

31.     Pauley is a named insured under the Policy.

32.     CenturyLink is not a named insured under the Policy.

33.     The Policy contains endorsements identifying certain companies unaffiliated with

Dycom as additional insureds. The Policy also includes an additional insured endorsement

through which CenturyLink seeks coverage here. That endorsement, the "**Additional Insured –**

**Owners, Lessees or Contractors – Completed Operations**" endorsement, states:

> **A. Section II – Who Is An Insured** is amended to include as an additional
> insured the person(s) or organization(s) shown in the Schedule, but only with
> respect to liability for "bodily injury" or "property damage" caused, in whole or in
> part, by "your work" at the location designated and described in the Schedule of
> this endorsement performed for that additional insured and included in the
> "products-completed operations hazard". However:

9

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s):**

All persons or organizations for whom you have agreed in a written contract or agreement, prior to an "occurrence" or offense, to provide additional insured status

**Location And Description Of Completed Operations**

All locations as required by a written contract or agreement entered into prior to an "occurrence" or offense.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

34.     The Policy's use of "the words 'you' and 'your' refer to the Named Insured

shown in the Declarations, and any other person or organization qualifying as a Named Insured

under this policy."

35.     The Policy provides per occurrence and personal and advertising injury limits of $5,000,000 each, and general aggregate and products-completed operations aggregate limits of $10,000,000.  Coverage pursuant to the "**Additional Insured – Owners, Lessees or Contractors – Completed Operations**" endorsement is limited to the lesser of either the coverage required by the contract or the applicable limits of insurance under the Policy.  During the 2009 MSA's term, according to the 2009 MSA, Pauley was required to provide $1,000,000 in commercial general liability insurance.  Because that is less than the Policy's limits, the maximum amount Liberty Mutual is responsible for paying on CenturyLink's behalf if CenturyLink is an additional insured under the Policy is $1,000,000.

36.     The Policy's insuring agreement sets forth what Liberty Mutual agrees to insure, subject to the Policy's conditions, limitations, and exclusions.  Under the Policy, Liberty Mutual agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" or "'personal and advertising injury' to which this insurance applies."  Liberty Mutual also has "the right and duty to defend the insured against any 'suit' seeking those damages" but "ha[s] no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage'" or "'personal and advertising injury' to which [the Policy] does not apply."

37.     The Policy also includes provisions explaining what liabilities are excluded from coverage.  For example, the Policy contains a professional services exclusion, which states:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services by or for you.

38.    The Policy is subject to a $1,000,000 deductible amount, which can be eroded by damages, including amounts paid in settlement of a claim or suit, and supplementary payments.

## LIBERTY MUTUAL'S RESERVATION OF RIGHTS

39.    Liberty Mutual timely responded to CenturyLink's tender letter.  In its response, Liberty Mutual agreed to participate in CenturyLink's defense subject to a full reservation of rights, including the right to reimbursement of defense costs.  Liberty Mutual also requested additional information it needed to evaluate whether or not CenturyLink was an additional insured under the Policy.

40.    CenturyLink responded to Liberty Mutual's letter, accepting Liberty Mutual's offer to provide a defense, subject to a reservation of rights, with mutually agreeable defense counsel.  Liberty Mutual has assented to CenturyLink's choice of counsel—law firms Hall & Evans and Carlson, Calladine & Peterson LLP, both of which CenturyLink had retained to represent it in the Underlying Actions before Liberty Mutual's offer of defense—as mutually agreeable counsel.

41.    Liberty Mutual has requested additional information from CenturyLink in order to continue investigating and evaluating its insurance obligations, if any.  In response to Liberty

Mutual's inquiries, CenturyLink has not provided any information or documentation evidencing that the 2009 MSA, the only MSA under which Pauley performed work at the Marshall trailhead, was still in effect at the time of the loss.

## CENTURYLINK DOES NOT QUALIFY AS AN ADDITIONAL INSURED UNDER THE POLICY

42.   The Policy provides additional insured coverage only to persons or organizations for which a named insured (such as Dycom and Pauley) has agreed to provide coverage through a contract or agreement.  Pauley agreed to provide commercial general liability coverage to CenturyLink as an additional insured until the expiration of the 2009 MSA.  Despite Liberty Mutual's requests for information, to date CenturyLink has not provided information demonstrating that the 2009 MSA was still in force when Liberty Mutual issued the Policy to Dycom in January 2021.  In other words, CenturyLink has not shown that, at the time Liberty Mutual issued the Policy, Pauley still had an obligation to obtain commercial generally liability insurance on behalf of CenturyLink as an additional insured.  Because the Policy only extends additional insured coverage where agreed to by contract, CenturyLink is not an additional insured under the Policy.

## LIBERTY MUTUAL HAS NO DUTY TO DEFEND CENTURYLINK

43.   Liberty Mutual has no duty to defend CenturyLink pursuant to the express language of the Policy.  The Policy provides, in pertinent part, that Liberty Mutual "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

44.   Pursuant to this express policy language, Liberty Mutual is only obligated to defend suits against an "insured."

13

45.    CenturyLink is not a named insured under the Policy.

46.    Furthermore, as explained herein, CenturyLink does not qualify as an additional insured under the Additional Insured Endorsement because that endorsement is not implicated unless a named insured agreed, in a written contract or agreement, to provide CenturyLink additional insured status.  Although Pauley had agreed under the 2009 MSA to provide CenturyLink such status while the 2009 MSA was in effect, CenturyLink has not shown that the 2009 MSA was still in effect at the time the Policy issued—and thus there was no longer an agreement to provide CenturyLink additional insured status.

47.    Moreover, even if CenturyLink were an additional insured, the Policy makes clear that any coverage for additional insureds is limited to "liability for 'bodily injury' or 'property damage caused, in whole or in part, by 'your work'"—i.e. work of a named insured.  Here, the Underlying Actions assert direct claims against CenturyLink but do not allege that CenturyLink is vicariously liable for Pauley's negligent acts or omissions.  Indeed, the complaints in the Underlying Actions do not mention Pauley at all.  The Additional Insured Endorsement, under applicable law, depends on the plaintiffs' allegations in the Underlying Actions—it is not implicated by an additional insured pointing to the insured as the purported real source of the plaintiffs' injuries.

48.    Additionally, even if Pauley had been named in the Underlying Actions, Liberty Mutual's obligation to defend CenturyLink would be limited only to allegations that CenturyLink was liable for bodily injury or damage caused by Pauley, not for bodily injury or damage caused by CenturyLink's own negligence.

49.     To the extent CenturyLink's telecommunications line caused or contributed to the fire at the Marshall Mesa Trailhead, there are no allegations in the complaints that any failure of the line was due to Pauley's work.  The underlying lawsuits allege in part that CenturyLink failed to inspect, maintain, repair, manage, and/or operate its equipment.  Pauley completed its installation work on the line in 2014, and CenturyLink did not engage Pauley to perform any inspection, maintenance, or repair work on the line between 2014 and 2021, when the fire started.

50.     Finally, the Policy expressly excludes from coverage "bodily injury" or "property damage" "arising out of the rendering of or failure to render any professional services by [a named insured] or on [a named insured's] behalf" with respect to "providing engineering, architectural or surveying services to others in [a named insured's] capacity as an engineer, architect or surveyor" and "providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work [a named insured] perform[s]" (the "Professional Services Exclusion").

51.     The Underlying Actions allege that CenturyLink failed to properly design, construct, inspect, maintain, repair, manage, and/or operate its equipment attached to utility poles at or near the Marshall Mesa Trailhead.  CenturyLink, in turn, has claimed that Pauley, although not named as a defendant in the Underlying Actions, installed the telecommunications line at or near the Marshall Mesa Trailhead.  The Policy's Professional Services Exclusion excludes coverage for the claims and damages asserted in the Underlying Actions to the extent they arise out of Pauley's (a) providing or failing to provide engineering, architectural, or surveying services to others in Pauley's capacity as an engineer, architect, or surveyor" or (b) providing, or

hiring independent professionals to provide, engineering, architectural, or surveying services in connection with construction work Pauley performed.

52.     In other words, Liberty Mutual would have no duty to defend CenturyLink for alleged liability arising out of Pauley's professional services.

### LIBERTY MUTUAL HAS NO DUTY TO INDEMNIFY CENTURYLINK

53.     The Policy provides, in pertinent part, that if a suit is brought against an "insured" for damages because of "bodily injury" or "property damage," covered under the Policy, Liberty Mutual will pay up to its limit of liability for the damages for which the "insured" is legally liable.

54.     However, as explained herein, CenturyLink has not established that it is an additional insured under the Policy or that the Underlying Actions implicated coverage.  In the absence of coverage, Liberty Mutual owes no duty to indemnify CenturyLink in the Underlying Actions.

55.     Additionally, even if CenturyLink were to establish that it is an additional insured, Liberty Mutual's obligation to indemnify CenturyLink pursuant to the Additional Insured Endorsement would be limited only to liability for bodily injury or damage caused by Pauley, not for bodily injury or damage caused by CenturyLink.

56.     Moreover, any indemnification by Liberty Mutual may also be expressly limited by the applicable anti-indemnification statute prohibiting indemnity provisions that require an indemnitor to pay damages caused by the indemnitee's own fault or negligence, or that of its agents.  Such provisions are void as against public policy and not enforceable.  Therefore, under

applicable law, Liberty Mutual would have no duty to indemnify CenturyLink for liability

caused by CenturyLink's own fault or negligence.

## ALTERNATIVELY, ANY OBLIGATION TO INDEMNIFY CENTURYLINK UNDER THE POLICY IS SUBJECT TO A $1 MILLION LIMIT OF LIABILITY

57.    Per the terms of the Policy, any coverage provided to additional insureds as

required by a contract or agreement cannot "be broader than that which [the named insured] [is]

required by the contract or agreement to provide for such additional insured."  The 2009 MSA

required Pauley to provide and maintain during the term of the agreement a commercial general

liability coverage with a $1,000,000 combined single limit per occurrence.  Any coverage that

exists for CenturyLink as an additional insured is thus limited to $1,000,000.

## CAUSES OF ACTION

### Count I

#### *Declaratory Judgment—CenturyLink Is Not an Additional Insured*

58.    Liberty Mutual repeats and re-alleges the allegations contained in Paragraphs 1

through 57 above, as if fully set forth herein.

59.    CenturyLink has requested that Liberty Mutual defend and indemnify

CenturyLink under the Policy as an additional insured.

60.    Liberty Mutual has agreed to defend CenturyLink as an additional insured in the

Underlying Actions subject to a reservation of rights.

61.    An actual controversy has arisen as to whether, under the terms, conditions,

limitations, and exclusions of the Policy, CenturyLink is an additional insured under the Policy.

62.    Pursuant to 28 U.S.C. § 2201, Liberty Mutual is entitled to a declaration that

CenturyLink is not an additional insured under the Policy.

17

## Count II

### *Declaratory Judgment—Liberty Mutual Has No Duty to Defend CenturyLink*

63.    Liberty Mutual repeats and re-alleges the allegations contained in Paragraphs 1 through 62 above, as if fully set forth herein.

64.    As described herein, Liberty Mutual has no duty to defend CenturyLink in the Underlying Actions because CenturyLink is not a named or additional insured under the Policy.

65.    Additionally, Liberty Mutual has no duty to defend CenturyLink in the Underlying Actions because the Underlying Actions do not contain allegations seeking to hold CenturyLink vicariously liable for property damage or bodily injury caused by Pauley and/or because the Professional Services Exclusion applies to bar coverage.

66.    Therefore, pursuant to 28 U.S.C. § 2201, Liberty Mutual is entitled to a declaration that it owes no duty to defend CenturyLink with respect to any of the claims against it in the Underlying Actions.  Alternatively, if there is a finding that the Underlying Actions allege both covered and noncovered claims, Liberty Mutual is entitled to a declaration that it is entitled to recoup defense costs incurred as to the noncovered claims.

## Count III

### *Declaratory Judgment—Liberty Mutual Has No Duty to Indemnify CenturyLink*

67.    Liberty Mutual repeats and re-alleges the allegations contained in Paragraphs 1 through 66 above, as if fully set forth herein.

68.    As described herein, Liberty Mutual has no duty to indemnify CenturyLink in the Underlying Actions because CenturyLink is not a named or additional insured under the Policy.

69.     Furthermore, Liberty Mutual has no duty to indemnify CenturyLink because the Underlying Actions do not contain allegations seeking to hold CenturyLink vicariously liable for damages or injuries caused by Pauley and/or because the Professional Services Exclusion applies to bar coverage.

70.     Therefore, pursuant to 28 U.S.C. § 2201, Liberty Mutual is entitled to a declaration that it owes no duty to indemnify CenturyLink with respect to any of the claims against it in the Underlying Actions.  Alternatively, if there is a finding that the Underlying Actions allege both covered and noncovered claims, Liberty Mutual is entitled to a declaration that it is not obligated to indemnify CenturyLink for any injury or damage absent a finding that that such injury or damage is on account of CenturyLink's vicarious liability for property damage or bodily injury caused by Pauley.

## **Count IV**

### ***Declaratory Judgment—Alternatively, Any Obligation to Indemnify CenturyLink Is Subject to a $1 Million Limit of Liability***

71.     Liberty Mutual repeats and re-alleges the allegations contained in Paragraphs 1 through 70 above, as if fully set forth herein.

72.     For the reasons stated above, Liberty Mutual has no duty to defend or indemnify CenturyLink.

73.     As described herein, in the event that this Court determines Liberty Mutual has a duty to defend or indemnify CenturyLink, Liberty Mutual's obligation is subject to the $1,000,000 limit of liability as contracted for between Pauley and CenturyLink in the 2009 MSA.

74.    Therefore, pursuant to 28 U.S.C. § 2201, Liberty Mutual is entitled to a declaration that, if it has a duty to defend or indemnify CenturyLink, there is a $1,000,000 limit of liability.

## Count V

### *Recoupment of Defense Costs*

75.    Liberty Mutual repeats and re-alleges the allegations contained in Paragraphs 1 through 74 above, as if fully set forth herein.

76.    Liberty Mutual will incur funds in defense of CenturyLink to which CenturyLink is not entitled under the Policy.  Liberty Mutual is paying those defense costs under a complete reservation of rights, including the right to seek reimbursement of those costs.

77.    Because Liberty Mutual has no obligation to pay any defense costs, Liberty Mutual is entitled to recoupment of those costs.

## REQUEST FOR RELIEF

WHEREFORE, Liberty Mutual respectfully requests that this Court grant it the following relief:

A.  Enter a declaratory judgment that CenturyLink is not an additional insured under the Policy;

B.  Enter a declaratory judgment that Liberty Mutual has no duty to defend CenturyLink under the Policy in the Underlying Actions;

C.  Enter a declaratory judgment that Liberty Mutual has no duty to indemnify CenturyLink under the Policy in the Underlying Actions;

D.  Award Liberty Mutual recoupment of any defense costs it incurred in defending CenturyLink in the Underlying Actions; and/or

E.  Alternatively, enter a declaratory judgment that the CenturyLink is subject to a $1 million limit of liability under the Policy;

F.  Grant such other relief as this Court deems just and appropriate.

**LIBERTY MUTUAL REQUESTS A TRIAL TO A JURY ON ALL ISSUES REQUIRING FACTFINDING.**

Dated:  September 23, 2024

*/s/ Deborah L. Stein*
Deborah L. Stein
Isabella Sayyah
Abigail Averill
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Ave.
Los Angeles, California 90071
Tel:  (213) 229-7000
dstein@gibsondunn.com
isayyah@gibsondunn.com
aaverill@gibsondunn.com

M. Scott Campbell
**GIBSON, DUNN & CRUTCHER LLP**
1801 California Street, Suite 4200
Denver, Colorado 80202
Tel:   (303) 298-5700
scampbell@gibsondunn.com

*Counsel for Plaintiff Liberty Mutual Fire Insurance Company*