### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 24-cv-02626-NYW-KAS

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Plaintiff,

v.

QWEST CORPORATION, d/b/a CENTURYLINK QC,

    Defendant.

## ORDER ON MOTION TO DISMISS

Pending before the Court is Defendant's 12(b)(1) Motion to Dismiss or, in the Alternative, Motion to Dismiss or Stay Under the Declaratory Judgment Act ("Motion to Dismiss" or "Motion"). [Doc. 20, filed November 5, 2024]. Plaintiff has responded in opposition, [Doc. 23], and Defendant has replied, [Doc. 28]. The Court finds that oral argument would not materially assist in the disposition of the Motion. For the reasons set forth below, the Motion to Dismiss is respectfully **DENIED**.

### BACKGROUND

The Court draws the following facts from the Complaint for Declaratory Judgment and Jury Demand ("Complaint"), [Doc. 1], and other documents submitted by the Parties.[1] This declaratory judgment action springs from ongoing state court litigation over a 2021 wildfire in Boulder County, Colorado, known as the Marshall Fire. [*Id.* at ¶¶ 1, 13–16]. Defendant Qwest Corporation d/b/a CenturyLink QC ("Defendant" or "CenturyLink") is a

---

[1] The Court does not presume the truthfulness of the Complaint's factual allegations. *See infra* Legal Standards, Part I.

defendant in several of the state court lawsuits ("Underlying Actions").  [*Id.* at ¶ 15].  *See generally* [Doc. 20-2; Doc. 20-3; Doc. 20-4].  Those lawsuits allege, in essence, that a faulty telecommunications line owned by CenturyLink played a role in igniting the Marshall Fire.  [Doc. 1 at ¶ 15]; *see also, e.g.*, [Doc. 20-2 at 44 ¶¶ 65–70].  That telecommunications line was installed for CenturyLink by Pauley Construction, LLC ("Pauley") in 2014.  [Doc. 1 at ¶ 18].

About a month after the Underlying Actions were filed, CenturyLink sent a letter to Pauley's parent company, Dycom Industries, Inc. ("Dycom").  *See* [Doc. 23-2].  CenturyLink's letter requested that Pauley defend and indemnify CenturyLink against the Underlying Actions and any other claims related to the Marshall Fire.  [*Id.* at 3].  CenturyLink based this request on a Master Services Agreement executed in 2009 ("MSA") between Pauley and CenturyLink's predecessor.  [*Id.*].  The MSA requires Pauley to defend and indemnify CenturyLink from and against all damages resulting from Pauley's performance or non-performance of duties related to the MSA.  [Doc. 1 at ¶ 24; Doc. 23-2 at 3].  The MSA also requires Pauley to, among other things, maintain a commercial general liability insurance policy that names CenturyLink as an Additional Insured on the policy.  [Doc. 1 at ¶¶ 23–25; Doc. 23-1 at 3].

At the time of CenturyLink's letter, Pauley's general commercial liability insurance coverage came from a policy (the "Policy") that Dycom purchased from Plaintiff Liberty Mutual Fire Insurance Co. ("Plaintiff" or "Liberty").  The Policy names Pauley as an insured but does not name CenturyLink.  [Doc. 1 at ¶¶ 31–32]; *see also* [Doc. 17 at 9–11, 42–47].  The Policy does, however, provide that an unnamed party may qualify as an "additional insured."  [Doc. 1 at ¶ 33; Doc. 17 at 279].  The relevant provision ("Additional Insured

2

Endorsement") states that an unnamed party becomes an Additional Insured if a named insured—here, Pauley—has agreed to extend that party "additional insured status." [Doc. 17 at 279]. Even if there is such an agreement, the Additional Insured is insured only with respect to "liability for 'bodily injury' or 'property damage' caused" by Pauley's work. [*Id.*].

In response to CenturyLink's letter, Liberty offered to provide a defense to CenturyLink under the Policy subject to a reservation of rights. [Doc. 1 at ¶ 39; Doc. 23-3 at 8]. Liberty explained in its initial response and subsequent correspondence with CenturyLink that Liberty was attempting to determine whether CenturyLink qualified as an Additional Insured under the Policy. [Doc. 23-3 at 7; Doc. 23-5 at 2; Doc. 23-7 at 2]. CenturyLink accepted Liberty's offer to provide a defense subject to a reservation of rights. [Doc. 23-4 at 3]. CenturyLink continued to reiterate its position that the MSA requirement that Pauley obtain insurance naming CenturyLink as an "Additional Insured[]" remained in effect. [*Id.* at 2; Doc. 23-8 at 2]. However, CenturyLink now contends that Liberty Mutual has informed it that Liberty Mutual is providing a defense solely under the Policy's separate Supplementary Payments coverage, not the Additional Insured Endorsement. [Doc. 20 at 6; Doc. 20-5 at ¶ 4].

Because the Policy includes a $1 million deductible, Liberty has not yet paid any of CenturyLink's defense costs in the Underlying Actions. [Doc. 1 at ¶ 38; Doc. 17 at 48]. Instead, Liberty has directed that Dycom pay the first $1 million in defense costs as "supplementary payment[s]" under the Policy. [Doc. 20-1 at ¶¶ 11–12; Doc. 20-5 at ¶ 4; Doc. 23-1 at ¶ 10]. Liberty will thus bear the costs of CenturyLink's defense only if they exceed $1 million.

Given that CenturyLink's status as an Additional Insured remains unresolved,

3

Liberty initiated this case to clarify its obligations to CenturyLink under the Policy. *See generally* [Doc. 1]. Liberty seeks a declaration that CenturyLink is not an Additional Insured and that, among other things, Liberty has no duty to defend or indemnify CenturyLink in the Underlying Actions. [*Id.* at ¶¶ 58–70]. Liberty contends that it owes no coverage to CenturyLink under the Additional Insured Endorsement because the MSA has expired, so there is no agreement that Pauley obtain coverage for CenturyLink. [*Id.* at ¶¶ 42, 46]. Even if the MSA remains in effect, Liberty argues, the Underlying Actions allege damages caused by CenturyLink, not Pauley, so the Additional Insured Endorsement does not apply. [*Id.* at ¶¶ 47–49]. Liberty also asserts that, to the extent the damages in the Underlying Actions were caused by Pauley's conduct, the conduct falls within the Policy's coverage exclusion for "engineering, architectural or surveying services" provided by Pauley ("Professional Services Exclusion"). [*Id.* at ¶¶ 50–51]; *see also* [Doc. 17 at 359].

CenturyLink now argues that Liberty lacks Article III standing and asks the Court to dismiss this case for lack of subject matter jurisdiction. *See* [Doc. 20 at 6–10]. Alternatively, CenturyLink urges the Court to dismiss or stay the case pursuant to the Court's discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. *See* [Doc. 20 at 10–16]. The Court considers the Parties' arguments below.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

CenturyLink's standing argument implicates the Court's subject matter jurisdiction. *See In re Yellow Cab Coop. Ass'n*, 132 F.3d 591, 594 (10th Cir. 1997). Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ.

P. 12(b)(1).  "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim.  Instead, it is a determination that the court lacks authority to adjudicate the matter."  *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).  Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which trigger different analytical frameworks.  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that

> Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms.  First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotations and citations omitted)).

Here, CenturyLink mounts a factual attack on Liberty's jurisdictional allegations.  [Doc. 20 at 3–4; Doc. 23 at 9–10].  In resolving this attack, the Court does not presume the truth of the Complaint's factual allegations and considers the entire record in resolving the disputed jurisdictional facts.  Liberty bears the burden of demonstrating subject matter

5

jurisdiction by a preponderance of the evidence. *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

## II.   Declaratory Judgment Act

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory judgment actions often require courts to face the difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111 n.12 (10th Cir. 2010) (cleaned up).

The Supreme Court has "explained that the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Article III has long been interpreted as forbidding federal courts from rendering advisory opinions." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011); *see also Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) ("District and appellate courts have limited subject matter jurisdiction and may only hear cases when empowered to do so by the Constitution and by act of Congress." (quotation omitted)). "It is not the role of federal courts to resolve abstract issues of law. Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties." *Columbian Fin. Corp.*, 650 F.3d at 1376.

6

The Declaratory Judgment Act "presents two separate hurdles for parties seeking a declaratory judgment to overcome." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy," which has been "equated to the Constitution's case-or-controversy requirement." *Id.* "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). "Second, even where a constitutionally cognizable controversy exists, the Act stipulates only that district courts 'may'—not 'must'— make a declaration on the merits of that controversy." *Surefoot*, 531 F.3d at 1240. Accordingly, "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Id.*; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("[T]he Declaratory Judgment Act [is] an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." (quotation omitted)).

In other words, the Court "is not obliged to entertain every justiciable declaratory claim brought before it." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994). A court considers several case-specific factors, sometimes called the *Mhoon* factors, in deciding whether to hear a declaratory judgment claim:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 983 (quotation omitted) (brackets in original).

## ANALYSIS

I.   **Article III Standing**

CenturyLink argues that this case does not present a justiciable case or controversy because Liberty lacks standing. [Doc. 20 at 6]. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, a plaintiff must show he (1) suffered an injury in fact that (2) is fairly traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020). The Court addresses each element in turn.

A.   **Injury in Fact**

CenturyLink's injury in fact argument depends on its assumption about the Policy provision underlying Liberty's (and Dycom's) payment of CenturyLink's defense costs. CenturyLink claims that the Policy contains separate coverage for "Supplementary Payments" that covers its defense—or at least Dycom's payment of its defense—regardless of whether CenturyLink qualifies as an Additional Insured. [Doc. 20 at 6–8]. Because the supposed "Supplementary Payments" coverage obligates Liberty and Dycom to cover defense costs, CenturyLink reasons that Liberty has not suffered an injury in fact regarding its coverage for Additional Insureds. [*Id.* at 7–8]. Liberty counters that CenturyLink misreads the Policy and overcomplicates the injury in fact analysis—CenturyLink has demanded Liberty cover CenturyLink's ongoing defense costs under the

8

Policy, and coverage can only exist if CenturyLink is an Additional Insured.  [Doc. 23 at 13–14].

The injury in fact requirement "involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014).  The injury cannot be "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560.  In the insurance context, a coverage dispute "frequently involves a real, and often imminent, threat of harm to the parties." *United Fin. Cas. Co. v. Rocha*, 726 F. Supp. 3d 1295, 1301 (D.N.M. 2023) (collecting cases).  The Tenth Circuit has accordingly recognized that an insurer who may "bear [a] loss" has standing to seek a declaration of its "relative rights and duties" under the relevant insurance policies.  *Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335–36 (10th Cir. 2017).  And the Supreme Court held in a foundational declaratory judgment case that an insurer could sue to ascertain whether it was obligated to indemnify and defend an insured in a state court lawsuit.  *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 271, 274 (1941).

Applying these principles, the Court finds that Liberty has adequately established an injury in fact.  CenturyLink has demanded that Liberty provide coverage for its defense costs in the Underlying Actions. Liberty contends that it is not obligated to extend coverage.  In the meantime, CenturyLink's defense costs—though directly paid, for now, by Dycom—continue to accrue against the Policy's deductible.  These facts alone demonstrate at least a threatened injury to Liberty's interests.  *See United Fire & Cas. Co. v. Caskey Drywall NM LLC*, No. 17-cv-01108-KG-JHR, 2018 WL 3429921, at *4 (D.N.M. July 16, 2018) (concluding that insurer had standing to sue for declaration that it had no duty to defend or indemnify insured in underlying lawsuit (citing *Md. Cas. Co.*, 312

9

U.S. at 271)).

Moreover, to the extent that Liberty's financial liability is contingent on CenturyLink's defense costs exceeding the deductible, "contingent liability can be a basis for Article III standing in the declaratory judgment context." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1332 (10th Cir. 2022).  Though CenturyLink's mounting defense costs may not exhaust the deductible, the risk of harm to Liberty is both substantial and concrete.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur." (quotation omitted)); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1301 (10th Cir. 2008) ("A probabilistic harm, if nontrivial, can support standing." (quotation omitted)).  In this situation, neither Article III nor the Declaratory Judgment Act require Liberty to wait to clarify its coverage obligations.  *See* 10B *Wright & Miller's Federal Practice and Procedure* § 2757 (4th ed. May 2025 update) (describing a declaratory judgment as "proper" when an insurer seeks a declaration that it need not indemnify an insured for a judgment awarded to a third person, though the third person may never sue or obtain a judgment).  The Court thus concludes that Liberty has met its burden to demonstrate an injury in fact.

The Court is respectfully unpersuaded by CenturyLink's argument that Supplementary Payments coverage exists to defeat Liberty's alleged injury in fact.  CenturyLink's position that the Policy's Supplementary Payments provision functions as a freestanding source of coverage is, at best, confusing.  [Doc. 20 at 7–8; Doc. 28 at 2–5].  That provision states that Liberty will defend an "indemnitee of the insured" against a lawsuit only if both the indemnitee and an "insured" are named in the suit.  [Doc. 17 at 34

10

§ 2]. But Pauley, the named insured, is not named in the Underlying Actions, so CenturyLink only qualifies for Supplementary Payments coverage if it is an "insured." [*Id.*]; *see also* [Doc. 20-2 at 35–36; Doc. 20-3 at 14–15; Doc. 20-4 at 8–9]. The Supplementary Payments provision does not provide its own definition of "insured." [Doc. 17 at 34 § 2]. Thus, it appears that whether CenturyLink is an insured will be determined by the Section II of the Policy—titled "Who Is An Insured"—rather than the Supplementary Payments provision. [*Id.* at 34–35]; *see also* [*id.* at 279 (modifying Section II)]. And contrary to CenturyLink's position, the Parties' prelitigation correspondence makes clear that Liberty has always viewed the Additional Insured Endorsement as the controlling provision in deciding whether the Policy would cover CenturyLink's defense costs. *See* [Doc. 23-3 at 3–4, 7–8; Doc. 23-5 at 2–3].

More importantly, however, the Court need not conclusively resolve the Parties' coverage arguments to determine whether Liberty has standing. The precise source of CenturyLink's coverage under the Policy, if any, is a merits issue for another day. To the extent CenturyLink bases its standing argument on the scope of Liberty's duties under the Supplementary Payments coverage, such argument cuts to the merits of the Declaratory Judgment relief, and is more appropriately resolved at summary judgment or at trial. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (en banc) ("For purposes of standing, the question cannot be whether the Constitution, properly interpreted, extends protection to the plaintiff's asserted right or interest. If that were the test, every losing claim would be dismissed for want of standing.").

At this stage, to establish standing, Liberty need only demonstrate that a dispute over its coverage obligations has inflicted a cognizable injury. It has done so. *See Am.*

11

*Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 799 (11th Cir. 2011) ("FFIC denied coverage and Evercare has demanded it. That is a controversy and thus there is jurisdiction."). The Court respectfully concludes that Liberty has satisfied the injury in fact requirement for Article III standing.

### B. Remaining Elements of Standing

Having found that Liberty has demonstrated an injury in fact based on CenturyLink's demand that Liberty cover its defense costs, the remaining elements of standing follow logically from this conclusion. Liberty's injury is fairly traceable to CenturyLink's demand for coverage. And a favorable judicial decision will redress the injury by declaring that CenturyLink is not entitled to coverage from Liberty. Accordingly, the Court finds that Liberty has standing. The Motion is respectfully **DENIED** to the extent it asks the Court to dismiss this case for lack of subject matter jurisdiction.

## II. Requirements of the Declaratory Judgment Act

In addition to its standing arguments, CenturyLink asks the Court to use its discretion under the Declaratory Judgment Act to dismiss or stay this case. [Doc. 20 at 10–16]. As an initial matter, before exercising its discretion, the Court must determine whether this case presents an "actual controversy." *Surefoot*, 531 F.3d at 1240. Although CenturyLink challenges this requirement, it merely incorporates the same standing arguments the Court rejected above. [Doc. 20 at 10–11]. The Court accordingly finds that this case raises an "actual controversy" justiciable under the Declaratory Judgment Act. The remaining inquiry, then, is whether the *Mhoon* factors counsel in favor of this Court using its discretion to entertain Liberty's declaratory judgment action. *Surefoot*, 531 F.3d at 1240.

12

### A.     Application of the *Mhoon* Factors

In *Mhoon*, the Tenth Circuit identified five factors to weigh in deciding whether to hear a declaratory judgment action. 31 F.3d at 983. Though the Court must consider all five factors, the decision to stay, dismiss, or permit a declaratory judgment action remains within the Court's discretion. *Id.* The Court thus assesses the Parties' arguments on the *Mhoon* factors, mindful that the guiding question is whether this lawsuit "provide[s] the better opportunity to resolve the issues." *Valley Forge Ins. Co. v. ALK Enters., LLC*, 748 F. App'x 770, 771 (10th Cir. 2018).

### 1.     First and Second Factors: Whether the Action Would Settle the Controversy and Serve a Useful Purpose in Clarifying the Legal Relations at Issue

The first two *Mhoon* factors are whether the declaratory judgment action would "settle the controversy" and "serve a useful purpose in clarifying the legal relations at issue." *Mhoon*, 31 F.3d at 983. Courts frequently examine these two factors together. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Jones*, No. 20-cv-00389-WJM-GPG, 2021 WL 5415869, at *3 (D. Colo. Nov. 19, 2021). "Consideration of these elements together makes sense given that 'these two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings.'" *Rocha*, 726 F. Supp. 3d at 1303 (quoting *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002)). "Without some degree of similarity between the proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue." *City of Las Cruces*, 289 F.3d at 1183.

CenturyLink argues that the first two factors weigh in favor of dismissal because a declaratory judgment "would not resolve the entirety of the dispute." [Doc. 20 at 11

13

(quoting *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1196 (D. Colo. 2018))]. This contention rests on CenturyLink's theory that the Policy's Supplementary Payments provision—or other coverage provisions triggered by the MSA—provide alternative avenues for CenturyLink to obtain coverage. As a result, CenturyLink reasons, a declaration resolving the "application of the Additional Insured coverage . . . would not settle Liberty's obligations." [*Id.*]. Liberty responds that whether CenturyLink is an Additional Insured is just one of "several determinations regarding availability of coverage" that Liberty asks the Court to resolve. [Doc. 23 at 16–17]. Liberty asserts that a declaratory judgment as to CenturyLink's coverage will "resolve the controversy" and clarify the legal relationship between Liberty and CenturyLink. [*Id.* at 17].

The Court agrees with Liberty that a declaratory judgment as to Liberty's coverage obligations will resolve the controversy over the Parties' legal relations. CenturyLink attempts to frame this case as seeking only a declaration of CenturyLink's Additional Insured status. [Doc. 20 at 11]. But that view reads the Complaint too narrowly. In the Complaint, Liberty seeks declaratory judgments that it has no duty to defend or indemnify CenturyLink at all. [Doc. 1 at 20]. Liberty focuses on the Additional Insured Endorsement because it contends that no other Policy provision would entitle CenturyLink to coverage. [Doc. 23 at 10–11]. To the extent CenturyLink contends that other sources of coverage exist under the Policy, it may press those arguments. After the Court has resolved those questions, though, a declaration as to whether Liberty has a "duty to defend [or indemnify] CenturyLink under the Policy in the Underlying Actions" will resolve the Parties' dispute and clarify their legal relations. [Doc. 1 at 20]; *see also St. Paul Fire & Marine*, 2021 WL 5415869, at *3 (concluding that first two *Mhoon* factors weighed against stay or dismissal

14

where declaratory judgment action would resolve dispute over whether insurer was "obligated to defend or indemnify" insureds). The Court accordingly finds that the first two *Mhoon* factors weigh in favor of hearing this case.

### 2. Third Factor: Whether the Action is Being Used for "Procedural Fencing" or a "Race to Res Judicata"

The third *Mhoon* factor is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*.'" *Mhoon*, 31. F.3d at 983. CenturyLink argues that Liberty's decision to file this action was "questionable" and "precipitous[]." [Doc. 20 at 11–12]. This argument again depends on CenturyLink's disagreement with Liberty over the proper interpretation of the Policy. [*Id*.]. But given the dispute over Liberty's coverage obligations and the catastrophic impact of the Marshall Fire, it is unsurprising that Liberty seeks declaratory relief to settle the matter. [Doc. 23 at 17–18]. The Court discerns no "sinister motives" in Liberty's use of the declaratory judgment mechanism to establish its nonliability under the Policy—an approach that "both Tenth Circuit and Colorado precedent approve." *Liberty Mut. Pers. Ins. Co. v. Prutsman*, No. 23-cv-02615-RMR-SBP, 2024 WL 3341002, at *7 (D. Colo. June 10, 2024), *recommendation adopted*, 2024 WL 3738937 (D. Colo. June 25, 2024). The Court finds that the third *Mhoon* factor supports an exercise of declaratory judgment authority.

### 3. Fourth Factor: Whether Use of the Action Would Increase Friction Between Federal and State Courts

The fourth *Mhoon* factor is "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983. This factor weighs in favor of a stay or dismissal if

15

the declaratory action raises "fact-dependent issues [that] are likely to be decided in another pending proceeding." *Rocha*, 726 F. Supp. 3d at 1304 (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989)). Conversely, the fourth factor favors exercising jurisdiction if the declaratory action "involve[s] no undue interference with the state proceeding." *Mhoon*, 31. F.3d at 984.

CenturyLink argues that this "suit is likely to implicate factual issues material to the Underlying Actions." [Doc. 20 at 13]. Issues about the "scope and timing of Pauley's work" on CenturyLink's telecommunications line relate to the question of "fault in the Underlying Actions." [*Id.*]. CenturyLink also emphasizes that it has designated Pauley as a non-party at fault in the Underlying Actions. [*Id.* at 14]; *see also* [Doc. 1 at ¶ 17]. CenturyLink thus contends that, to the extent the Additional Insured Endorsement's applicability turns on whether CenturyLink's liability was "caused, in whole or in part, by [Pauley's] work," adjudicating this suit will require the Court to answer factual questions about "the cause of the losses alleged in the Underlying Actions." [Doc. 20 at 14–15]; *see also* [Doc. 17 at 279]. Liberty responds that this case presents "purely legal" questions. [Doc. 23 at 18]. According to Liberty, the Court can determine Liberty's duty to defend based on the complaints in the Underlying Actions, which will in turn resolve Liberty's duty to indemnify. [*Id.*].

Although Liberty overstates the simplicity of this case, the Court finds that exercising jurisdiction over this case will not encroach on state court jurisdiction. The threshold issues in this case—the validity and scope of the MSA—are not at issue in the Underlying Actions. *See* [Doc. 20-2 at ¶¶ 109–19 (alleging CenturyLink and other unnamed defendants acted negligently in installing, operating, and maintaining

16

telecommunications equipment associated with the Marshall Fire); Doc. 20-3 at ¶¶ 98–104 (same); Doc. 20-4 at ¶¶ 98–104 (same)]. True, those threshold issues may encompass some factual questions, as CenturyLink suggests. [Doc. 28 at 10–11]; *see also Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008) ("Whether a contract exists is a question of fact.").[2] But the inquiry under the fourth *Mhoon* factor is not whether a declaratory action raises <u>any</u> factual questions. As such, the mere presence of factual questions does not sway the Court from exercising jurisdiction. *See Mhoon*, 31 F.3d at 983–84 (finding that federal court did not abuse discretion in hearing declaratory action where both federal and state actions faced "critical" fact issue of whether insured acted intentionally or only negligently).

To be sure, if the Court finds the MSA was still in effect at the time of the Marshall Fire, the question of whether the damages in the Underlying Actions were "caused" by Pauley's work will overlap with the issues in the Underlying Actions. *See* [Doc. 17 at 279]. As Liberty points out, however, the Court need not resolve those issues to decide Liberty's duty to defend. That determination will focus solely on the pleadings in the Underlying Actions. *See Hecht v. Great N. Ins. Co.*, 769 F. App'x 562, 565 (10th Cir. 2019) (applying Colorado law). And if Liberty has no duty to defend, it necessarily also has no duty to indemnify. *Id.* If Liberty does owe a duty to defend, however, the Court may not be able to resolve Liberty's duty to indemnify until the Underlying Actions resolve the cause of the damages triggering CenturyLink's liability. *See Cyprus Amax Minerals Co. v. Lexington*

---

[2] Because the Parties refer to Colorado law in their briefs, the Court assumes without deciding that Colorado law will govern the merits of this case. *See* [Doc. 20 at 15; Doc. 23 at 14; Doc. 28 at 10–11]; *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

17

*Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003) ("The duty to indemnify . . . typically cannot be determined until the resolution of the underlying claims."). As this case progresses, the Court will revisit the appropriateness of a stay or dismissal of Liberty's declaratory claims as necessary. *See, e.g.*, *N.H. Ins. Co. v. TSG Ski & Golf, LLC*, No. 21-cv-01873-CMA-NYW, 2022 WL 1184547, at *6 (D. Colo. Apr. 21, 2022) ("[T]he Court agrees with other courts from this district that reconsideration of dismissal or a stay may be warranted if the case evolves such that the Court must make factual determinations that may affect the [state court action] or prejudice [d]efendants." (citations omitted)).

For now, though, the Court finds that it can resolve the threshold issues in this case and determine Liberty's duty to defend without encroaching on state court jurisdiction. *See Mhoon*, 31 F.3d at 983–84 (affirming district court's decision to retain declaratory judgment jurisdiction where insurer had "substantial interest" in resolving coverage obligations "without undue delay, particularly the question of the duty to defend," despite presence of overlapping fact issue in state action). The Court thus finds that, at this stage of the litigation, the fourth *Mhoon* factor weighs in favor of exercising jurisdiction.

### 4. Fifth Factor:  Whether a Better or More Effective Remedy Exists

Finally, the Court considers the fifth *Mhoon* factor—"whether there is an alternative remedy which is better or more effective." *Id.* at 983. CenturyLink urges the Court to follow the Colorado Supreme Court's dictum in *Hecla Mining Co. v. New Hampshire Insurance Co.* that:

> The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file

18

> a declaratory judgment action after the underlying case has been adjudicated.

811 P.2d 1083, 1089 (Colo. 1991); *see also* [Doc. 20 at 15]. But as Liberty points out, the Colorado Supreme Court walked back that statement in *Hecla* just five years later in *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1996). [Doc. 23 at 19]. There, the Colorado Supreme Court observed that where a duty to defend does not arise from the allegations in the complaint, "it may be appropriate to allow the insurer an opportunity to obtain an anticipatory declaration of its obligations towards its insured prior to the expenditure of considerable resources." *Const. Assocs.*, 930 P.2d at 563. Liberty further argues that waiting for the Underlying Actions to resolve is an insufficient remedy because those actions will never resolve the coverage issues presented here, and staying or dismissing this case would force Liberty and its insured, Dycom, to "expend considerable resources in the face of a tenuous claim for coverage under the Policy." [Doc. 23 at 19].

The Court respectfully agrees with Liberty. In *Mhoon*, the Tenth Circuit recognized an insurer's "substantial interest" in deciding coverage issues "without undue delay, particularly the question of the duty to defend." 31 F.3d at 984. As in *Mhoon*, the Underlying Actions will not resolve Liberty's coverage obligations. Thus, Liberty has "a strong interest in resolving this action before potentially expending considerable resources in the state court litigation." *TSG Ski & Golf*, 2022 WL 1184547, at *6. Although *Hecla* and *Constitution Associates* are merely persuasive authority, the Court concurs with the Colorado Supreme Court's observation that an anticipatory declaratory action is appropriate where the existence of a duty to defend is in doubt and the insurer faces a risk of funding a defense that it does not owe. *Const. Assocs.*, 930 P.2d at 563. As

19

explained above, whether the MSA requires Liberty to defend CenturyLink is a threshold question that the Underlying Actions will not decide. Liberty's interest in answering that question before it expends resources on CenturyLink's defense means that there is no more effective remedy than proceeding with this declaratory action.[3] Accordingly, the Court respectfully finds that the fifth *Mhoon* factor supports an exercise of declaratory judgment authority over this case.

In sum, all five *Mhoon* factors weigh in favor of permitting this declaratory action to proceed. Because Liberty has satisfied the requirements for an exercise of the Court's authority under the Declaratory Judgment Act, the Motion is respectfully **DENIED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Defendant's 12(b)(1) Motion to Dismiss or, in the Alternative, Motion to Dismiss or Stay Under the Declaratory Judgment Act [Doc. 20] is **DENIED**.

DATED: September 12, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[3] The Court is also respectfully unpersuaded by CenturyLink's alternative argument that waiting for the Underlying Actions to conclude is a "better or more effective" remedy because CenturyLink's defense costs may never exhaust the deductible. [Doc. 20 at 15–16]. As explained above, the possibility that CenturyLink's defense costs will not exceed the deductible does not prevent Liberty from bringing this action to ascertain its coverage obligations. And unlike a declaratory action, CenturyLink's "wait and see" approach will not "clarify the legal relations and end the uncertainty" regarding Liberty's alleged duty to defend. *Cf. Am. Nat'l Prop. & Cas. Co. v. Rosenschein*, No. 19-cv-00599-NDF-KHR, 2020 WL 3448279, at *4 (D.N.M. Mar. 23, 2020) (exercising declaratory judgment authority where insurer could have intervened in state action to resolve duty to defend but such an alternative did not "appear to be a better or more effective remedy" than a federal declaratory action).

20